SARAH WYATT, plaintiff in error, vs. ALLEN W. TURNER, defendant in error. .

1. The landlord's lien on the crop for advances made to the tenant, for the purpose of making the crop, must be evidenced by a special contract in writing ; a mere promissory note, without any words expressive of a contract for a lien, is not such a special contract.
2. Whether this lien on the crop is superior to a judgment lien of older date, quere ?

*Certiorari.* Lien. Decided by Judge SPEER. Henry Superior Court, October Term, 1867.

By virtue of a cost *fi. fa.* and two other *fi. fas.* vs. E. S. Ferguson, forty-eight bushels of wheat were sold, as Ferguson's property, and brought $76.52. Turner was present at the sale, bought thirty-three bushels of it, and after the sale, notified the bailiff, that at the next term of the Justice's Court, he would claim said money by virtue of a landlord's lien on Ferguson's crop.

When the Court sat, plaintiff asked that the money should be paid to said *fi. fas.* but Turner presented an affidavit claiming such lien, and asked that plaintiff in *fi. fas.* should join issue upon his right to said lien, and of its priority to the lien of the judgment, and have that issue decided before said money was distributed. The Court required the issue joined and tried. The plaintiff read the *fi. fas.*, which were founded on judgments obtained on the 28th of April, 1866, and closed.

It was then shown that Ferguson was Turner's tenant, that Turner furnished him with provisions and money to make a crop, (how much, was not shown) but he gave him his note therefor, for $165 00, due 1st of November, 1867, and agreed that Turner should have a lien on his crop, to secure him in such advances. The date of said note does not appear in the record, but it appears that it was taken about the 1st of June, 1867. The agreement as to this lien being wholly in parol, the plaintiff objected to the testimony. The Justice overruled the objection.

During the argument, and before plaintiff's atttorney was

heard in conclusion, the Justice decided that Turner's lien was better than that of the judgments.   This he did at that time, because, as he said, he thought the argument was concluded. But he heard the plaintiff's attorney in conclusion, and then reiterated his decision, and ordered the money paid to Turner on said note.   The plaintiff gave notice of a *certiorari*, and wished the money held by the bailiff, but the Justice ordered the money paid to Turner, upon his giving a bond to refund it.   All this occurred at the September term, 1867 of said Justice's Court.

The *certiorari* was sued out, the grounds of complaint being the admission of said parol testimony to establish the lien, the said decision of the Court, both because it was premature and because it was wrong, and the order requiring the money paid to Turner after notice of the *certiorari*, and before his note was due.

Judge Speer held that under the Act of 1866, Turner's lien was of higher dignity than that of the older judgments, but sustained the *certiorari*, because Turner's claim had not been reduced to judgment, saying that in its present State it could not successfully compete with the judgments, but that if it were put into judgment before said money was paid out, then it would take the money in preference to said *fi. fas.*

This decision is complained of as erroneous.

McDANIEL, PEEPLES & STEWART, for plaintiff in error.

J J. FLOYD, for defendant in error.

WALKER, J.

On the 15th Dec., 1866, the General Assembly passed an act, entitled "An act to give landlords a lien upon the crops of tenants, for stock, farming utensils and provisions furnished such tenants for the purpose of making their crops, and to give factors and merchants a lien upon the growing crops of farmers, for provisions and commercial manures furnished them for the purpose of making their crops.

"SEC. I. Be it enacted, that from and after the passage of

42

this act, that landlords may have, by special contract in writing, a lien upon the crops of their tenants for such stock, farming utensils and provisions furnished such tenants for the purpose of making their crops.

SEC. II. That factors and merchants shall have a lien upon the growing crops of farmers for provisions furnished, and commercial manures furnished, upon such terms as may be agreed upon by the parties.

SEC. III. That such liens shall be enforced in the same way and manner that liens are now enforced against steamboats in this State.

SEC IV. Repeals conflicting laws."

Acts 1866, p. 141.

1. This act authorizes the creation of a lien upon the crop of a tenant in favor of the landlord for stock, provisions etc., "by special contract in writing." The Court below held, in this case, that where the evidence showed that the landlord made the advances to aid in making the crops, and it was understood that a lien was to be created on the crop for the advances, and a promissory note was given for the amount so due, that this gave the landlord such a lien as contemplated by the statute ; and that the lien created under the statute upon the crop of the tenant in favor of the landlord, was of higher dignity than a prior judgment lien.

The note given for the advances was a simple promissory note, and failed to show any intention to create a lien on the crop ; it was a mere promise to pay so many dollars. This was not what the statute intended by the words "special contract in writing." This special contract may be imbraced in a promissory note, but there must be written evidence of the contract in order to create such a lien. "Landlords may have, by special contract in writing, a lien upon the crops of their tenants," are the words of the statute. Such being the statute, the Court erred in holding that a promissory note, without any special contract in writing showing an intention to create a lien, was such a lien as contemplated by the statute.

This view of the case renders it unnecessary to decide whether the landlord's lien upon the tenant's crop for ad-

vances is of higher dignity than judgment liens of older date or not. Judges Warner and Harris are inclined to hold that, so far as the crop is concerned, the landlord has the higher lien. They say it is true the statute does not, in express terms, give this preference, yet, in looking to the policy of the act, as well as to the words of the third section, they are inclined to think this the better ruling. The third section authorizes these liens to be enforced "in the same way and manner that liens are now enforced against steamboats in this State;" and the lien given on steamboats by the Code, section 1968, to employees, etc., "is of the highest dignity." I am rather inclined to think this is giving to the statute a meaning more enlarged than a fair construction of the words will warrant. It seems to me that the words "in the same way and manner," as used in the act of 1866, refer to the remedy alone, and do not enlarge the right. I think if this lien was designed to override all others, the statute would have said so in express terms. The mechanics' lien "shall be superior in dignity and of higher claim than any other incumbrance, without regard to date." Revised Code, section 1959. The machinist "shall be entitled to the same lien, and may enforce such lien in the same manner and with like benefit, privileges and restrictions as those which apply to mechanics." Revised Code, sec. 1966. The steamboat lien is "of the highest dignity." Mill-wrights and builders of gold machines have a lien "of the same dignity" as the steamboat lien, and may enforce it in the same way. Revised Code, section 1973. Stone cutters and marble companies have a similar lien, which may be enforced the same way. Revised Code, section 1974. These are referred to as evidence that the omission to declare, in express terms in this act, that the landlord's lien is paramount to all others, was intentional; and the priority was not designed to be given. These are mere suggestions, however. The facts of this case render a decision of this point unnecessary. The Court below sustained the *certiorari*, but ordered the money held up until the defendant in error could reduce his claim to judgment, and that it should then be paid to him. This was error. Turner

having no such lien as contemplated by the statute, the Court should have ordered the money to be paid to the plaintiff in error.

Judgment reversed.